**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

United States                                                    Plaintiff

Versus                          Criminal Action No. 5:07cr00025-DCB-JCS

Vinson Eric Woodberry                                            Defendant

### OPINION AND ORDER

Pursuant to a *sua sponte* Order, a criminal and civil contempt hearing concerning Attorney Latrice Westbrooks ("Westbrooks") was held in Natchez, Mississippi, on August 26, 2009. Having carefully considered the witnesses' testimonies and the evidence presented in light of all applicable law, the Court finds and orders as follows:

### I. Background and Procedural History

The original action that gave rise to the contempt hearing was Westbrooks' failure to appear on behalf of her client Vinson Woodberry ("Woodberry" or "defendant") at a sentencing hearing on June 16, 2009, and failure to attend the rescheduled sentencing on July 2, 2009. On June 24, 2009, the Court appointed the Honorable Dennis Joiner ("Joiner"), Federal Public Defender, or any assistant public defender to review the file of the defendant due to the absence of Westbrooks at the June 16, 2009, sentencing. Westbrooks was the defendant's attorney of record at all times prior to June 24, 2009.

The circumstances relevant to this Order date back to April 2, 2008. Originally, a Trial Order was entered on April 2, 2008,

setting the case of United States v. Vinson Woodberry for trial on June 3, 2008. On May 30, 2008, a continuance was requested by the defense and an agreed order was entered stating that the defense requested additional time to prepare for trial. The trial was reset for August 5, 2008. On July 30, 2008, a second continuance was requested by the defense and an agreed order was entered stating that the defense needed additional time to prepare for trial and the trial was reset for October 6, 2008. On September 26, 2008, a third continuance was requested by the defense stating that the defense attorney's office had been flooded and an agreed order was entered resetting the trial for December 8, 2008. On December 1, 2008, a fourth motion for continuance was filed by the defense stating that the defense needed additional time to prepare for trial due to the damaged office. The trial was then reset for January 28, 2009. On January 21, 2009, the defendant requested a change of plea hearing, which was set for February 3, 2009. The change of plea took place on February 3, 2009, and Westbrooks was present. Woodberry pled guilty to one count of distribution of cocaine base ("crack") in violation of 21 U.S.C. § 841(a)(1).

At the change of plea hearing, a sentencing date was set for April 21, 2009. On March 9, 2009, the sentencing date was reset to May 19, 2009. On May 1, 2009, the defense filed a motion for continuance of sentencing due to defense counsel being on medical restrictions. A continuance was granted on May 14, 2009, and

sentencing was reset for June 16, 2009.  On Friday, June 12, 2009, the defense filed a motion at 6:21 p.m. requesting that the sentencing set for June 16, 2009, be continued and reset.  On Monday, June 15, 2009, Debra Jackson, the Courtroom Deputy Clerk, contacted Westbrooks by telephone and advised her that the motion was not received until that morning and that the sentencing was not going to be continued and would remain set for June 16, 2009, at 3:30 p.m.  Westbrooks advised that she would not appear in court.  In total, the Court accommodated Westbrooks by granting at least five (5) continuances sought by her on behalf of her client.

Due to Westbrooks' absence on June 16, 2009, the Court reset the defendant's sentencing to July 2, 2009.  On June 24, 2009, the Court issued an Order stating "at said sentencing Latrice Westbrooks should be prepared to explain to the Court why she should not be held in contempt for failing to appear on the 16th day of June, 2009.  Honorable Dennis Joiner, Federal Public Defender, or any assistant public defender is hereby appointed to review the file and make such reports to the Court as may be requested."  Despite the Order and the accommodations already granted to Westbrooks and her client by the Court, Westbrooks failed to appear at the sentencing hearing on July 2, 2009.  At the sentencing on July 2, 2009, the defendant was represented by the Honorable Abby Brumley of the Federal Public Defender's office.  The defendant was sentenced to a 57-month sentence for a conviction

of one count of distribution of cocaine base ("crack") in violation of 21 U.S.C. § 841(a)(1).

In addition to her failure to appear at the sentencing hearings, Westbrooks also failed to appear at a meeting on February 24, 2009, with Kevin Wright, Probation Officer, to discuss the Pre-Sentence Report prepared for the defendant. More significantly, she lodged no objections to the Pre-Sentence Report on behalf of her client and, consequently, Woodberry faced guideline calculations without the benefit of acceptance of responsibility or the safety valve provision of the guidelines. As a result, he faced a Level 30 with a Sentencing Range of 97 to 121 months. After the June 24, 2009, Order appointing Public Defender Joiner to review the defendant's file, Joiner contacted Westbrooks concerning the defendant. He offered his assistance, which was accepted, but Westbrooks informed Joiner that she had more pressing matters to attend, that the defendant would be in jail for a long time, and that she would not be at the sentencing on July 2, 2009. (R. at 61-63). Thereafter, the Public Defender and his staff represented Woodberry, filing objections to the Pre-Sentence Report on his behalf. The objections summarily resulted in the defendant receiving both acceptance of responsibility and the safety valve reduction which reduced the Guideline Sentencing Range from 97 to 121 months to 57 to 71 months. As said, the defendant received a 57-month sentence.

On July 21, 2009, the Court held a hearing in Jackson, Mississippi, giving Westbrooks notice of a contempt hearing to be held in Natchez, Mississippi, on August 26, 2009, allowing her a reasonable time to prepare a defense. The Court explained that the contempt hearing would involve both civil and criminal contempt of court issues for her failure to appear in court in Natchez, Mississippi, for Woodberry's sentencing hearings - June 16, 2009, and July 2, 2009 - as well as for her suspected lack of adequate representation of the defendant. The Court also stated that if sufficient evidence was presented at the hearing to hold Westbrooks in criminal contempt, the Court might assign the matter to another judge for final disposition.

The Court issued an Order on July 29, 2009, stating the specific issues that Ms. Westbrooks should be prepared to address at the contempt hearing. Those issues were:

1. Why did Westbrooks fail to appear in court on June 16, 2009, for Woodberry's sentencing hearing?

    a. Why did Westbrooks fail to provide notice of her alleged inability to appear until Friday, June 12, 2009?

2. Why did Westbrooks fail to appear in court on July 2, 2009, for Woodberry's sentencing hearing?

3. How many times did Westbrooks consult with Woodberry about this case?

    a. How long did each meeting last?

    b. Where did each meeting take place?

4. How much did Westbrooks charge Woodberry and his parents

5

for her services in this case?

5. Why did Westbrooks fail to meet with the probation officer and/or the public defender's office to review Woodberry's presentence investigation report?

Also, at the hearing on July 21, 2009, Ms. Westbrooks indicated that the retainer fee Woodberry and his parents paid also included her services in state court proceedings against Woodberry. Therefore, Ms. Westbrooks was required to address the following additional issues at the hearing on August 26, 2009:

6. What is the nature of the charges against Woodberry in the State Court?

   a. What is the current status of those charges?

7. How many times did Westbrooks meet with Woodberry about the state case?

   a. How long did each meeting last?

   b. Where did each meeting take place?

8. How much did Westbrooks charge Woodberry and his parents for her services in the state case?

9. To what extent did Westbrooks' work in the federal case overlap with her work in the state case?

On August 26, 2009, this Court held a contempt hearing in Natchez, Mississippi, concerning the issues outlined above. Westbrooks was represented by the Honorable Dennis Sweet at the hearing.

## II. Analysis

### A. *Civil Contempt and Criminal Contempt*

1. Civil Contempt

In failing to appear at the sentencing hearings on June 16, 2009, and July 2, 2009, Westbrooks deliberately ignored orders of this Court. When a court issues orders which are disobeyed, "the recalcitrant may be cited, according to the circumstances, for criminal contempt or civil contempt or both." Norman Bridge Drug Co. v. Banner, 529 F.2d 822, 827 (5th Cir. 1976). "Whether a contempt is civil or criminal turns on the 'character and purpose' of the sanction involved." United Mine Workers of America v. Bagwell, 512 U.S. 821, 827 (1994)(citation omitted). A civil contempt sanction is one that is remedial in nature and used to enforce compliance with a court order or to compensate an injured party for losses sustained as a result of the contemptuous action. Id.; Gompers v. Buck's Stove and Range Co., 221 U.S. 418, 441 (1911). On the other hand, the punishment for criminal contempt is punitive and is used to vindicate the authority of the court. United Mine Worker's, 512 U.S. at 828.

To hold a respondent in civil contempt, it must be found by clear and convincing evidence that "(1) a court order was in effect, (2) the order required specified conduct by the respondent, and (3) the respondent failed to comply with the court's order." United States v. City of Jackson, 359 F.3d 727, 731 (5th Cir. 2004). Good faith on the part of the respondent is no defense to civil contempt. Id. at 735 (citing Chau v. Transocean Offshore,

7

Inc., 276 F.3d 725, 729 (5th Cir. 2002)).[1]

In the instant case, Westbrooks knowingly failed to appear at two scheduled sentencing hearings. It is clear that she was aware of the date of the June 16, 2009, sentencing and was also aware of this Court's Order for her to appear at the July 2, 2009, sentencing. Concerning the June 16, 2009, sentencing, Westbrooks filed a motion for continuance on Friday, June 12, 2009, at 6:21 p.m. The Court Clerk contacted Westbrooks on Monday, June 15, 2009, and told her that the sentencing would not be continued. Nonetheless, Westbrooks failed to appear on June 16. Westbrooks' knowledge of the July 2, 2009, sentencing is also apparent. The Court issued an Order on June 24, 2009, that (1) ordered Westbrooks to appear at the sentencing on July 2 and explain her reasons for being absent on June 16, and (2) appointed Joiner, the Public Defender, or a person on his staff to review the file of Woodberry. Joiner testified at the contempt hearing on August 26, 2009, that he contacted Westbrooks on June 25 about Woodberry and offered his assistance, which was accepted. Nevertheless, Westbrooks informed Joiner that she had other more urgent matters, that Woodberry would be in jail for a long time, and that she would not be at the

---

[1] Circuit courts have disagreed over whether "a showing of 'bad faith' or 'willful disobedience' on the part of the contemnor is required to justify awarding attorney's fees" to an injured party for civil contempt. City of Jackson, 359 F.3d at 731. However, the Fifth Circuit has held that good faith is no defense to civil contempt. Id.

sentencing on July 2, 2009. (R. at 61-63).

Although Westbrooks presented some evidence that she was in State Court in Holmes County on June 16, 2009[2], and in State Court in Humphrey's County on July 2, 2009[3], the Court finds that this was not sufficient justification for her failure to attend Woodberry's sentencing in Natchez, Mississippi. The Court, on five (5) prior occasions, had liberally accommodated Westbrooks and her client by resetting trial dates and sentencing hearings. Westbrooks testified that, in regard to the July 2 hearing, she got her days mixed up and thought the hearing was on July 3, 2009. However, she received the June 24 Court Order giving her notice that her presence was required at the July 2 sentencing, and Mr. Joiner testified that she told him on June 25 that she had more important matters and would not be attending the July 2 hearing. Thus, this Court is unpersuaded by Westbrooks' assertion that she acted in good faith to appear at both sentencing hearings on behalf of her client. Westbrooks made a conscious decision to disregard the Federal Court proceedings and attend matters pending in State Court. The Court finds that Westbrooks deliberately chose to disregard the Court's Orders requiring her to attend the June 16 sentencing and the July 2 sentencing.

---

[2] Defendant's Exhibit A and Exhibit B. All exhibits referenced in this Order were submitted at the August, 26, 2009, contempt hearing.

[3] Defendant's Exhibit E.

For these reasons, this Court finds that there is clear and convincing evidence that Westbrooks failed to appear at two sentencing hearings, disobeyed a Court Order, and caused the Public Defender's Office to incur unnecessary monetary costs as a result of her conduct. This Court therefore holds her in civil contempt of court. See United States v. Dowell, 257 F.3d 694, 699 (7th Cir. 2001)(affirming civil contempt order for attorney disobeying court order to appear at his client's trial); United States v. Onu, 730 F.2d 253, 258 (5th Cir. 1984)(affirming a civil contempt order against a Senator who failed to appear in violation of a court order and holding that "the problem was created not by Senator Washington's attention to his state legislative duties but his carelessness concerning his responsibilities as a member of the bar of the federal court); Norman Bridge Drug Co., 529 F.2d at 829 (affirming a civil contempt order against the government for failing to abide by a temporary restraining order issued by the district court).

2. Criminal Contempt

As said, criminal contempt of court issues were also considered during the August 26, 2009, contempt hearing. Federal courts have the authority to hold an individual in criminal contempt of court pursuant to 18 U.S.C. § 401. The statute provides:

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its

> discretion, such contempt of its authority, and none other, as--
> (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
> (2) Misbehavior of any of its officers in their official transactions;
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401. Under § 401(3), an attorney's absence from court must be shown to be have been intentional or without justifiable excuse. <u>In re Greene</u>, 213 F.3d 223 (5th Cir. 2000). To be found guilty of criminal contempt, the contemptuous conduct must be proven beyond a reasonable doubt. <u>Gompers v. Bucks Store & Range Co.</u>, 221 U.S. 418. 444 (1911). Punishment for criminal contempt is punitive in nature and used to "vindicate the authority of the court," whereas punishment for civil contempt is remedial and used to compensate an injured party or to enforce a court order. <u>Id</u>. at 441; <u>Feiock v. Feiock</u>, 485 U.S. 624, 631 (1988). If a fine or imprisonment is imposed conditionally - the contemnor being able to discharge himself at any time by complying with the order - it is civil. <u>Id</u>. at 633. If the fine is unconditional or the imprisonment is imposed for a set term, it is criminal. <u>Id</u>.

Although there is sufficient evidence from which a reasonable jury or jurist could find Westbrooks guilty of criminal contempt beyond a reasonable doubt, the Court elects not to do so. In his summation, Mr. Sweet effectively argued that his client has practiced law for twelve (12) years, has represented numerous

11

clients in many settings and has never faced charges similar to those imposed by this Court. Based upon the circumstances, it is the opinion of the Court that the charge of criminal contempt should be and is hereby dismissed.

*B. Remedial Fines Necessary to Compensate Injured Parties*

The Court derives authority from three areas of law to impose fines against a party for civil contempt. First, in a civil contempt proceeding, the contemnor may be ordered to compensate the complainant, or injured party, for losses sustained. United States v. United Mine Workers of America, 330 U.S. 258, 304 (1947). The fine must be based on evidence of the injured party's actual loss. Id. The district courts have authority to make contemnors "pay the damages caused by their violations" of a court order, and the "measure of the court's power in a civil contempt proceeding[] is determined by the requirements of full remedial relief." McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949)(emphasis added); see also Petroleos Mexicanos v. Crawford Enterprises Inc., 826 F.2d 392, 399 (5th Cir. 1987)(affirming an award of $79,431.25 for civil contempt and holding civil contempt sanctions "are meant to be 'wholly remedial' and serve to benefit the party who has suffered injury or loss at the hands of the contemnor."). In addition, a district court can award relief to a non-party in the contempt action when the relief is "an incidental part of the main cause." City of Jackson, 359 F.3d at 737.

12

Second, the district courts have authority to impose fines or sanctions under the "inherent power of the federal courts." Chambers v. Nasco, Inc., 501 U.S. 32, 43 (1991). "It is firmly established that '[t]he power to punish for contempts is inherent in all courts.'" Id. at 44. The Supreme Court has said:

> It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." . . . For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." . . . These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."

Id. at 43 (citations omitted). Within this inherent power, the court may award "attorney's fees as a sanction for the 'willful disobedience of a court order' and where an attorney acts in 'bad faith, vexatiously, wantonly, or for oppressive reasons.'" Id. at 45-46 (citation omitted).

Lastly, Court authority to award attorney's fees exists under 28 U.S.C. § 1927, which states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Originally, § 1927 did not allow for the award of attorney's fees.

Roadway Express, Inc. v. Piper, 447 U.S. 752, 762-763 (1980). However, the statute was amended by Congress in 1980 to specifically include the award of attorneys' fees. Hagerty v. Succession of Clement, 749 F.2d 217, 223 at n.4 (5th Cir. 1984)(citing Pub. L. 96-349, 94 Stat. 1156 (codified as amended at 28 U.S.C. § 1927)). Specifically, "[s]ection 1927 permits a court to insist that the attorney bear the costs of his own lack of care" when he acts "recklessly or with indifference to the law." Braley v. Campbell, 832 F.2d 1504, 1511 (10th Cir. 1987). An imposition of sanctions *sua sponte* by the court requires "due process" and reasonable opportunity for the respondent to defend against the imposition of sanctions. In re Martin, 229 F.3d 1164, 2000 WL 1340168, *2 (10th Cir. 2000).

As said and for reasons now stated, Westbrooks is held in civil contempt of this court. She has unreasonably and vexatiously multiplied the proceedings of this Court by continually filing motions for continuances and failing to appear at two sentencing hearings. Travelers Ins. Co. v. St. Jude Hospital of Kenner, LA., Inc., 38 F.3d 1414, 1416-1417 (5th Cir. 1995). Her deliberate actions forced the court to hold a second sentencing hearing on July 2, 2009, to appoint new counsel for the defendant, hold another hearing on July 21, 2009, to give Westbrooks notice of the contempt hearing, and conduct the contempt hearing on August 26, 2009.

As requested by the Court, the Public Defender's Office calculated the costs of its services provided to Woodberry. The Public Defender's Office spent 24.2 total hours representing Woodberry at a rate of $110.00 per hour, which equaled $2,662.00. The rate is determined according to Volume 7, Chapter 2, Part C (2.22) of the Guidelines for the Administration of the Criminal Justice Act and Related Statutes. The mileage included two trips to Madison County jail and two trips to Natchez, Mississippi, which totaled 564 miles at a rate of $0.55 per mile equaling $310.20. Thus, the expenses incurred by the Public Defender's Office totaled $2,972.20.

Therefore, the Court orders that Westbrooks compensate the Public Defender's Office in the amount of $2,972.20, within 45 days of this Order, for its total expenses incurred in the representation of Woodberry. See <u>Koninklijke Philips Electronics N.V. v. KXD Technology, Inc.</u>, 539 F.3d 1039, 1043-1045 (9th Cir. 2008)(affirming the district court's order, which ordered payment for civil contempt sanctions to be made by a "certain date," and holding that compensatory civil contempt sanctions are only reviewable on final appeal)(citing <u>United Mine Workers of America v. Bagwell</u>, 512 U.S. at 633).

*C. Recommendation to Mississippi State Bar*

In addition to Westbrooks' civil contempt of court, there is also evidence that Westbrooks failed to provide Woodberry with

adequate legal representation. "The proper standard for attorney performance is that of a reasonably effective assistance." <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)(citation omitted). The Sixth Amendment's right to "Assistance of Counsel" relies upon the "legal profession's maintenance of standards sufficient to justify the law's presumption that counsel will fulfill the role in the adversary process that the Amendment envisions." <u>Id.</u> (citation omitted). Furthermore, counsel to a criminal defendant owes the defendant a duty of loyalty, an "overarching duty to advocate the defendant's cause and . . . the more particular duties to consult with the defendant on important decisions and <u>to keep the defendant informed of important developments in the course of the prosecution</u>. <u>Id.</u> at 688 (emphasis added).

Woodberry signed a contract with Westbrooks on March 20, 2008, for legal representation. (Exhibit H). This representation was for criminal charges in State Court and Federal Court arising out of the same unlawful conduct. Woodberry's parents paid $9,250.00 of a $10,000.00 retainer fee for representation of Woodberry on all charges. At all times during Westbrooks' representation of the defendant, he was housed in the Madison County Detention Center in Canton, Mississippi, on the three (3) federal charges of distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1).

During the period between March 20, 2008, and June 16, 2009, Westbrooks testified that she met with the defendant at Madison County Jail on eleven (11) different occasions to discuss his case. The only evidence presented regarding those visits was a printout of Westbrooks' billable hours, and an email, drafted by Westbrooks and addressed to Chuck McNeal at cmcneal@madison-co.com. (Defendant's Exhibit 1 and Exibit G). The subject line of the email states "Letter for jail visits." Id. The email contains eleven (11) dates with the last date of visitation on March 24, 2009. The amount of time spent at the jail for each visit was not specified in the email. Furthermore, there is no reply to the email nor a copy of a visitation log or any other evidence confirming the visitation dates or time spent at the jail. The email only contains an illegible written signature across the bottom stating "visitation coordinator" and dated August 24, 2009. Id. Westbrooks testified that she visited Woodberry at the jail on other occasions after 5 p.m. and on weekends but these visits were not recorded by the jail. Yet, she presented no evidence nor did she testify as to specific dates or times when these "after-hour" visits occurred.

The billable hours printout entered into evidence by Westbrooks is also questionable. (Defendant's Exhibit 1). According to printout, she spent a total of 36.9 hours on Woodberry's case. The contract states that in the event that the

17

retainer was exhausted, the client would be charged at the rate of $250.00 per hour above and beyond the retainer for additional services. Woodberry's parents paid $9,250.00 of a $10,000.00 retainer fee. Dividing $9,250.00 by 36.9 hours yields a total of $250.68 per hour. Therefore, Westbrooks' billable hours are suspect because 36.9 hours multiplied by $250.68 conveniently totals the exact amount paid to Westbrooks ($9,250.00) by Mr. and Mrs. Woodberry.

Furthermore, the billable hours printout states that Westbrooks spent a total of 19 hours visiting Woodberry at the Madison County Jail. (Defendant's Exhibit 1). Of the eleven (11) client visits listed on the printout, eight (8) were for 1.5 hours each. Id. The other three (3) client visits were for 4.5, 2.5, and 2.0 hours. Id. Woodberry testified that during the times Westbrooks visited him, at least one other inmate was taken with him to meet with Westbrooks. Woodberry also testified that Westbrooks only met with him 20-30 minutes each visit, indicating that she spent the other time with the other inmate. During Westbrooks' testimony, she verified that she had another client at the Madison County Detention Center during the period in which she represented Woodberry, but she did not indicate the amount of time she spent with that client or if she visited the client on the same days she visited Woodberry.

Although this Court recognizes that Westbrooks met with

18

Woodberry on several occasions, spoke with his parents about the case, and attended his plea hearing, the evidence presented casts doubt as to the adequacy of the legal representation provided to the defendant and hours billed to the defendant. Westbrooks effectively abandoned him after the plea hearing and provided no further services. Together with the hours billed for visits with the defendant at the jail, her billable hours printout also indicates that she billed for 0.2 hours spent at the sentencing hearing on June 16, 2009. This further taints the credibility of the billable hours printout because, as previously established, Westbrooks did not attend either sentencing hearing for the defendant. Other hours billed to Woodberry that appear excessive include 2.6 hours for writing a letter and placing a phone call to Herman Woodberry on March 13, 2008, 2 hours for receiving an email on March 23, 2008, and 2 hours for a telephone call with Herman Woodberry on June 1, 2009. For these reasons, the Court recommends that this matter be sent to the Mississippi State Bar for further investigation, and possible disciplinary action, as to the adequacy of the legal representation provided to Woodberry and the credibility of the billable hours printout showing the hours Westbrooks spent on this case.

### III. CONCLUSION AND ORDER

Based upon the foregoing analysis,

**IT IS HEREBY ORDERED** that Latrice Westbrooks compensate the

Public Defender's Office in the amount of $2,972.20 within 45 days of this Order.  The payment should be made payable to the Public Defender's Office and mailed to:

>     Attn. Honorable S. Dennis Joiner
>     Federal Public Defender's Office
>     200 South Lamar Street, Ste. 200-N
>     Jackson, Mississippi 39201.

**IT IS FURTHER ORDERED** that in the event Latrice Westbrooks fails to comply with this Order, the Court will appoint an attorney for the government to investigate and prosecute Latrice Westbrooks for criminal contempt of court pursuant to Federal Rule of Criminal Procedure 42(a).

**SO ORDERED** this the 27th day of October 2009.

                                    s/ David Bramlette
                              **UNITED STATES DISTRICT JUDGE**